IN RE MARGARET E. CALLAHAN'S ESTATE.

(52 A2d 880)

February Term, 1947.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, and STURTEVANT, JJ.

Opinion filed May 6, 1947.

*Lawrence & O'Brien* for the executor.

*Asa S. Bloomer* for the heirs.

*Lindley S. Squiers* for the intervenor.

STURTEVANT, J. Margaret E. Callahan, a widow, died testate in January, 1937, in the city of Rutland, where she had lived all her life. She left three sons, Daniel, Francis and Thomas, and two daughters, Margaret and Anna, surviving her. Margaret's husband, Charles J. O'Rourke, is the duly appointed and qualified executor of Margaret E. Callahan's estate. After directing payment of her debts, funeral expenses and expense of administration, the testatrix devised and bequeathed all her property, both real and personal, in equal shares to her above named five children. When the executor filed his final account in probate court, he listed as an asset of the estate an account against Francis for board, room and washing furnished to him by his mother and her estate from June 6, 1934, to May 1, 1937, amounting to $2011.32, including interest to that time. The probate court disallowed that item and also an item claimed as a credit for loss on sale of furniture in the sum of $250.00 The executor appealed to county court from the disallowance of these items in his account and a hearing was had at the March Term, 1944, at which only Margaret and Daniel entered as appellees. Findings of fact were made and filed and it was adjudged that Francis was indebted to the estate in the amount as above mentioned, which debt was an asset of the estate and should be allowed as such. Agreement has been reached as to the furniture item and therefore we give it no further attention.

While the cause was pending in county court, Helen T. Fewkes applied for leave to intervene, alleging that she had been granted a divorce from Francis Callahan in 1935, that on September 14, 1937, the county court made an order against him for the support of their minor children which was made a lien upon his interest in his mother's estate, that the order had not been complied with and was then in arrears in the amount of about $1700.00; that if the executor's account should be allowed, nothing would be due from the estate to her former husband, and that the interests of the parties to the appeal were hostile to her own. The application was denied upon the ground that, taking the allega-

tions therein contained as true, she had no legal right to enter as a party. Upon appeal to this Court, that holding and the judgment were reversed and the cause was remanded. See *In Re Callahan's Estate,* 114 Vt 252, 44 A2d 162.

At the second trial the court submitted two questions to the jury, viz., should the note for $579.48 given by Francis to his mother be allowed as an asset of the estate in the executor's account and also should the bill against Francis for board, room and washing in the sum of $2011.32 be so allowed? The jury answered the first question in the affirmative and the latter in the negative. The case is here upon exceptions by the executor and the appellee, Margaret O'Rourke, Daniel having deceased since the last trial. The appellants here are the executor and Margaret and hereinafter will be so designated.

The appellants made the claim below that the evidence offered by the intervenor failed to show that she had a lien as claimed by her but on the contrary showed affirmatively that she had no such lien because the county court was without jurisdiction to make the order in question. We first consider the question raised by exceptions to the ruling that the intervenor had a lien as claimed by her.

The intervenor contends that the petition which she brought to the county court dated July 23, 1937, and filed with the clerk of the court on August 24, 1937, gave that court jurisdiction to order the lien in question, because property belonging to Francis in this state, viz., his interest in his mother's estate, was thereby brought before, and within the control of, the court. Francis was then residing at East Hartford, Connecticut, where service was made on him in accordance with the statutory provisions for notice to and service on a non-resident defendant. He has not resided in Vermont since that time and was not served with process in this state and did not appear in those proceedings. The petition, omitting the caption, prayer for citation, date and signature, is as follows:

> "To the Rutland County Court, Comes Helen T. Fewkes, of the City of Rutland, County of Rutland and State of Vermont, and respectfully represents:
> "That at the March term, 1935, of Rutland County Court, she was granted a bill of divorce from Fran-

132

cis S. Callahan, which divorce became absolute on the 3rd day of November, 1935;

"That there are two minor children of the parties, to wit:

"Helen C. Callahan, born November 13, 1928, and "Francis S. Callahan, born December 13, 1930;

"That since the granting of said divorce, petitionee has failed and neglected to furnish any assistance whatsoever in the care of said children;

"That she has been informed that said Francis S. Callahan will receive certain proceeds, as an heir to the estate of his mother, Margaret E. Callahan, deceased;

"That upon receipt of the proceeds from said estate, she believes that the said Francis S. Callahan will dispose of them to the disadvantage of said minor children and that no part of said proceeds will be used by said Francis S. Callahan for the support and maintenance of said minor children.

"Wherefore, Your petitioner prays the Court to order said petitionee to pay to the petitioner such weekly sums of money, or such lump sum, from his inheritance from the estate of Margaret E. Callahan, or from his earnings, for the support of said minor children as to the court shall seem proper;

"Your petitioner further prays:

"2. That the Court will strictly enjoin and restrain the said Callahan from disposing, in any manner or form of the proceeds that he will obtain as his inheritance from the estate of Margaret E. Callahan or from disposing in any manner or form his rights, title or interest in and to his share of the proceeds from the said estate until an order is made and complied with concerning the maintenance and support of said minor children."

P. L. 3163 under which the petition is brought states.

"When a marriage is annulled or a divorce granted, and at any time thereafter, upon petition of

either of the parents, the court may make such other or further decree as it deems expedient concerning the care, custody and maintenance of the minor children of the parties and may, on the petition of either of the parents, annul, vary or modify such order."

Attached to the petition and served with it is a restraining order dated August 24, 1937, signed by a superior judge, ordering Francis not to dispose of his share of the proceeds of his mother's estate, until an order is made and complied with, concerning the support of his said minor children or until further order of court.

At the time the petition was brought, there was no order in force against Francis for the payment of money to the petitioner. After an ex parte hearing, the county court issued its judgment order on September 14, 1937. After reciting facts as set forth in the petition and other facts incident to the proceedings, the judgment order states as follows:

"And whereas, on the 14th day of September, 1937, hearing on said application was held before Rutland County Court, said Callahan not appearing.

"Therefore, it is ordered that said Francis S. Callahan shall pay to Helen T. Fewkes the sum of Five Dollars ($5.00) weekly, to be used for the support and maintenance of the minor children of the parties, said payments to commence on the 21st day of September, 1937, and continue until further order of the Court.

"It is further ordered that a lien against such proceeds of the estate of Margaret E. Callahan as shall inure to the benefit of the said Francis S. Callahan is hereby created in accordance with the statute in such case made and provided and the said Francis S. Callahan is enjoined and restrained from conveying or removing from the State any of the proceeds that inure to his benefit from said estate."

It is doubtless true that an order for the payment of alimony is in its nature personal and without personal service in

the state where made or appearance of the petitionee is subject to the infirmities of an ex parte judgment, should its enforcement against the petitionee be sought in a foreign jurisdiction. However, if the proceeding is such that property of the petitionee in this state is thereby brought before the court and within its control, such order is valid to the extent of such property, though the court does not have jurisdiction of the person of the petitionee. *Wilder* v. *Wilder,* 93 Vt 105, 106 A 562; *Noyes* v. *Noyes et al,* 110 Vt 511, 517, 9 A2d 123; *Prosser* v. *Warner,* 47 Vt 667, 19 Am Rep 132; *Smith* v. *Smith,* 74 Vt 20, 51 A 1060, 93 Am St Rep 882; *Pennoyer* v. *Neff,* 95 US 714, 24 L Ed 565; also see Annotations, 29 ALR p. 1381 et seq.; 64 ALR p. 1392 et seq.; 108 ALR p. 1302 et seq.; 164 ALR pages 354 and 355.

██ At the time of her decease the testatrix owned one parcel of real estate, viz., her home place in the city of Rutland. She also owned considerable personal property consisting mostly of stock in various corporations. On April 24, 1937, all of the devisees and persons interested in the estate except Thomas Callahan joined in a conveyance of said home place to Thomas and his wife. At that time, as a part of the purchase price, the grantees made, executed and delivered to Francis Callahan and Margaret C. O'Rourke a note for $3000. and a mortgage on said premises to secure same. There was no real estate remaining in the estate title to which had come to the devisees under the will when the intervenor brought her petition to the county court. Under our law, the legal title of real estate owned by a person at the time of his death passes immediately to his heirs or devisees, subject to the lien of the administrator or executor thereon for the payment of debts, expenses of administration and other expenses legally chargeable against the estate, in case the personal property in the estate is not sufficient for that purpose, *Roberts, Admr. Sotherland's Estate* v. *Morgan,* 30 Vt 319, 326; *Austin* v. *Bailey,* 37 Vt 219, 222, 86 Am Dec 703; *Coolidge* v. *Taylor and Trustee,* 85 Vt 39, 51, 80 A 1038; Woerner Am. Law of Administration, 3rd. ed., secs. 15, 16, 185 and 338; P. L. 1234 and 2917, and the legal title to his personal property goes to his administrator or executor, not in his own right but for a special purpose and as trustee for the heirs or legatees who hold the equitable title. *Pond* v. *Pond's Estate,* 79 Vt 352, 359, 65 A 97,

8 LRANS 212, and cases cited. It follows that cases similar to the one at bar in which the petition sets forth and describes real estate within the jurisdiction of the court which has come to the petitionee as heir or devisee and seeks to have an award of alimony made therefrom, are of little or no aid in the determination of the question before us.

■ An administrator or executor may vest in the distributees both title and possession of their respective shares of the personal property in the estate before an order of distribution is made or without any such order. This is so because the rights and title of such distributees in the property so acquired by them do not originate in the decree of distribution but are derived from the decedent, either by will or under the statute of distribution. *In re Clark's Estate,* 100 Vt 217, 221, 222, 136 A 389, and cases cited. But, a distributee has no right of action to compel delivery to him of title or possession of such property until it has been determined that, after the payment of debts due from the estate and all other legal charges against it, there remains property for distribution and the amount due each distributee has been fixed by decree of the probate court. How much, if anything, a distributee will be entitled to receive is contingent upon there being property remaining in the estate for distribution at the time of final settlement. *Island Pond National Bank* v. *Chase et al,* 101 Vt 60, 63, 141 A 474, 59 ALR 766, and cases cited. From the foregoing, it follows that Francis, under the provisions of his mother's will, took a vested interest in her estate at the time of her decease. Whether or not he would receive property as a legatee named in her will was a possibility depending on the assets in the estate being more than sufficient to pay all legal charges against it. That is, Francis has a possibility coupled with an interest in his mother's estate. Such interest is a property right which is alienable, something which he can sell or assign. *Kennedy* v. *Rutter,* 110 Vt 332, 344, 6 A2d 17.

■■ However, the mere fact that Francis had an alienable interest in his mother's estate at the time the intervenor brought her petition to the county court, under the circumstances of this case, was not sufficient to give the court jurisdiction to enter a personal judgment against him. If the proceeding was such that the interest of Francis in his mother's estate was thereby brought within the con-

trol of the court, and so, in effect, was a proceeding against such property, then, as an incident thereto, the court had jurisdiction to enter a judgment against Francis and such judgment is good to the extent that such property will satisfy it. Otherwise, the court was without authority to enter the judgment in question. *Wilder* v. *Wilder,* 93 Vt 105, 106 A 562; *Noyes* v. *Noyes et al,* 110 Vt 511, 517, 9 A2d 123; *Prosser* v. *Warner,* 47 Vt 667, 19 Am Rep 132; *Smith* v. *Smith,* 74 Vt 20, 51 A 1060, 93 Am St Rep 882; *Pennoyer* v. *Neff,* 95 US 714, 24 L Ed 565. Also see ALR Annotations, *supra.* The answer to the question thus presented is to be determined by the circumstances as they were before the judgment in question was rendered, because, ". . . ; the validity of every judgment depends upon the jurisdiction of the court before it is rendered, not upon what may occur subsequently." *Pennoyer* v. *Neff,* 95 US at 728, 24 L Ed 565.

Examination of the petition brought to the county court discloses that it contains no prayer for a lien on the property in question nor prayer for general relief. There are but two prayers in this petition having to do with this property. The second one asks for an injunction under the provisions of P. L. 3143 restraining the petitionee from disposing of his interest in his mother's estate or from removing such property from the state. While such restraining order was issued, the record does not show that it was recorded in accordance with the provisions of P. L. 3144 and so the question of a lien having been created under the provisions of that section is not before us. The petition does not seek to make the executor a party to the proceeding nor to give him any notice thereof. Neither does the petition attempt to restrain the executor from conveying to Francis his share in his mother's estate. In fact the petition is drawn upon the theory that the share of the estate due to Francis will be paid to him in due course. After stating in the body of the petition, "That upon receipt of the proceeds from said estate, she believes that the said Francis S. Callahan will dispose of them to the disadvantage of said minor children, . . ." The petitioner states: "Wherefore, your petitioner prays the court to order said petitionee to pay to the petitioner such weekly sums of money, or such lump sum, from his inheritance from the estate of Margaret E. Callahan, or from his earnings . ... as to the court shall seem proper". It is clear that

the county court under the circumstances of this case, had no jurisdiction to issue an order directing Francis to pay any part of his earnings to the petitioner. The proceeds of his mother's estate lawfully received by him in another state where he resides stand in the same class as his earnings. Neither is in the jurisdiction of the Rutland County Court. Thus it appears that the petition did not bring the interest of Francis in his mother's estate within the control of the county court. What is herein stated concerning this matter is for the purpose of pointing out conditions as they existed before the judgment order was entered in county court, and is not to be understood as in any way indicating how the property in question might have been brought within the control of the court.

It follows that the county court was without jurisdiction to make the order in question. Therefore, the lien relied upon by the intervenor is void and gives to her no right to intervene in these proceedings.

At the close of all the evidence, the executor moved that the court direct a verdict in his favor. Briefly stated, this motion was on the grounds that all the competent evidence in the case tended to show that Francis owed the bill for board, room and washing as claimed and that there was no evidence reasonably tending to establish a contrary inference. The executor was the advancing party and therefore he had the burden of showing an express contract making Francis liable for the bill or circumstances from which it may reasonably be inferred that at the time the services were rendered there was between Francis and his mother a mutual understanding and expectation of payment for same. *Peters* v. *Poro's Estate,* 96 Vt 95, 102, 117 A 244, 25 ALR 615, and cases cited.

The executor when testifying in the case stated, in reference to the bill in question, that Francis "admitted that he did owe it". It also appears from his testimony that the distributees held four or five meetings in March or April, 1937, for the purpose of settling the estate among themselves. At one of these meetings it was stated that Francis ought to pay for services rendered him by his mother and Margaret, the executor's wife, made out a bill and gave it to him, the executor, for collection. He found no account or memoranda among the papers of the testatrix concerning this matter. The bill as made out was for board, room and washing

stated thereon to have been furnished to Francis by his mother and covered a period from June·6, 1934, to May 1, 1937, and a charge was made at $10. per week for that whole time. The witness explained the fact that this item does not appear in the inventory of the estate which he filed because he understood that ·it was his duty to submit this bill to the commissioners for their consideration and he did so. He also stated that at one of these meetings it was agreed that Thomas should purchase the home ·place and should give a note for $3000. and mortgage on the premises to secure same, to Francis and Margaret, upon receipt of his deed, and this agreement was carried out.

The inventory which was filed in the probate court, May 10, 1937, and which does not include this claim against Francis, shows assets of the estate in sum of $13,014.62. Each distributee was to receive one-fifth of the residue of the estate after paying debts and other proper charges. The executor's final account dated March 11, 1939, lists such charges in the sum of $5896.99. It follows that if the probable share that Francis will receive, even if this bill is included as an asset of the estate, is charged with the $579.48 note held by the estate against him and also with one-half of the $3000. note given to him and Margaret in the Spring of 1937, his remaining probable interest in the estate falls far short of being sufficient to cover the board bill. The manner in which this bill came into being, the fact that nothing was found among the papers of the testatrix concerning this claim and the giving of the $3000. note to Francis and Margaret were circumstances to be considered and weighed by the jury in connection with the statement of the witness that Francis admitted that he owed the bill and the other material evidence· on that issue.

Therefore, error is not made to appear in the court's refusal to grant the executor's motion for a verdict. *Peters* v. *Poro's Estate,* 96 Vt 95, 102, 103, 117 A 244, 25 ALR 615, and cases cited.

Since our holding as to the lien relied on by the intervenor requires a reversal of the judgment rendered below, it is not necessary to consider other questions raised and briefed by appellants because none of them is likely to be raised on another trial.

*Judgment that the lien relied upon by the intervenor, Helen T. Fewkes, as giving to her an interest in the expected inheritance of*

*Francis S. Callahan from the estate of his mother, Margaret E. Callahan, is void and gives to her no right to intervene as a party in this case. Judgment reversed and cause remanded.*